UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------

UNITED STATES OF AMERICA

   - against -

GUANGHUA SHEN,

                    Defendant,

   - and -

CHEN ZHANG,
SIU MEI LAM, and
YIMING SONG,

                  Sureties.

-------------------------------------------------------------

**MEMORANDUM & ORDER**
18–CR–302 (MKB)

MARGO K. BRODIE, United States District Judge:

On June 14, 2018, a grand jury returned an indictment against Guanghua Shen[1] charging

her with (1) conspiracy to distribute and possess with intent to distribute 50 grams or more of

methamphetamine, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846, (2) distribution and

possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and

841(b)(1)(C), and (3) operating an illegal gambling business, in violation of 18 U.S.C. § 1955(a).

(Indictment ¶¶ 1, 5, 14.)  On August 7, 2018, Shen appeared before former Magistrate Judge

James Orenstein of the Eastern District of New York for a bail hearing and was subsequently

released on a two hundred and fifty thousand dollar ($250,000) bail bond secured by property

and cosigned by five sureties (the "August 2018 Bond").[2]  (Min. Entry dated Aug. 7, 2018,

---

[1]  Shen was originally charged along with eleven other co-defendants: Anthony Pineda, Yunfeng Gao, Si En Li, Ting Li, Yuan Li, Ivan Lnu, Marco Rescino, Jin Wang, Joung Hwa Yun, Lu Zhai, and Nan Zhang.  (*See generally* Indictment, Docket Entry No. 1.)

[2]  The August 2018 Bond included five sureties but was later modified three times: (1) on April 29, 2019, (Min. Entry dated Apr. 22, 2019, Docket Entry No. 180; Min. Entry dated Apr.

Docket Entry No. 112; Order Setting Conditions of Release, Docket Entry No. 113.)  The grand jury returned a superseding indictment on August 1, 2019 (the "Sup. Ind.") charging Shen with (1) conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(b)(1)(A)(viii) and 846, (2) distribution and possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and (3) operating an illegal gambling business, in violation of 18 U.S.C. § 1955(a). (Sup. Ind. ¶¶ 4, 6, 8, Docket Entry No. 168.)  On September 20, 2019, Shen pleaded guilty pursuant to a plea agreement to conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(b)(1)(A)(viii) and 846.  (Min. Entry dated Sept. 20, 2019, Docket Entry No. 258; Sup. Ind. ¶ 4.)  On April 2, 2024, the Court sentenced Shen to one year and one day of imprisonment and two years of supervised release, in addition to a $100 special assessment.  (J., Docket Entry No. 585.)   The Court ordered Shen to self-surrender to the Bureau of Prisons ("BOP") by January 6, 2025, before 2:00 P.M., (*id.*), but she failed to do so.[3]  *See* Compl. 6, *United States v. Shen*, No. 25–CR–48 (E.D.N.Y. Oct. 3, 2025), Docket Entry No. 1.

---

29, 2019, Docket Entry No. 183; Amended Bond Dated 4/29/2019, appended to Order Setting Conditions of Release, Docket Entry No. 114–2) (the "April 2019 Revised Bond"); (2) on August 7, 2019, (Min. Entry dated Aug. 7, 2019, Docket Entry No. 234; Order Setting Conditions of Release, Docket Entry No. 235) (the "August 2019 Revised Bond"); and (3) on February 24, 2020, (Min. Entry dated Feb. 24, 2020, Docket Entry No. 341; Amended Bond Dated 2/24/2020, appended to Order Setting Conditions of Release, Docket Entry No. 114–3) (the "February 2020 Revised Bond") (collectively the "Bonds").  The April 2019 Revised Bond, August 2019 Revised Bond, and February 2020 Revised Bond modified, among other things, the sureties originally listed on the August 2018 Bond.  The February 2020 Revised Bond is the current operative bond and lists three sureties: Chen Zhang, Yiming Song, and Siu Mei Lam (each, a "Surety," collectively, the "Sureties").  *See* section I.b. for further discussion on the changes made in each of these revised bonds.

[3]  Magistrate Judge Lara K. Eshkenazi of the Eastern District of New York issued an arrest warrant for Shen on January 13, 2025, and the Federal Bureau of Investigations ("FBI") subsequently arrested Shen.  Arrest Warrant, *United States v. Shen*, No. 25–CR–48 (E.D.N.Y. Jan. 13, 2025), Docket Entry No. 2.  A grand jury returned an indictment against Shen charging

Currently before the Court is the Government's motion pursuant to Federal Rule of Criminal Procedure 46(f) for forfeiture of the bail and an entry of judgment on the bail bond against Shen, as Defendant, and Chen Zhang, Siu Mei Lam, and Yiming Song, as Sureties, in the amount of $250,000.[4]  Shen opposed the Government's motion on August 25, 2025.[5]  For the reasons stated below, the Court grants the Government's motion for forfeiture and directs entry of judgment against Shen, but defers entry of judgement against the Sureties.

## I.    Background

### a.    The Bonds

The Indictment charged Shen with drug trafficking and gambling in connection with her involvement with a large-scale operation run by co-defendant Anthony Pineda.  (Presentence Investigative Report ("PSR") ¶¶ 5, 8–9, Docket Entry No. 318.)  On August 7, 2018, Judge Orenstein released Shen after the posting of a $250,000 bond secured by property and cosigned by five sureties.  (August 2018 Bond; PSR ¶ 1.)

The August 2018 Bond set various pretrial release conditions, including prohibiting Shen from entering any illegal gambling establishments or committing new crimes, requiring her to submit to random drug testing by Pretrial Services, and ordering her to "appear in court as required and [to] surrender for service of any sentence imposed as directed."  (August 2018 Bond

---

her with failure to surrender, in violation of 18 U.S.C. §§ 3146(a)(2), (b)(1)(A)(i) and 3551 *et seq.*.  Indictment, *Shen*, No. 25–CR–48, Docket Entry No. 6.  Shen later pleaded guilty to the charge and was sentenced by Judge Hector Gonzalez of the Eastern District of New York to 24 months in custody and three years of supervised release.  Min. Entry dated Mar. 21, 2025, *Shen*, No. 25–CR–48; Min. Entry dated Oct. 2, 2025, *Shen*, No. 25–CR–48; J. 2–3, *Shen*, No. 25–CR–48, Docket Entry No. 21.  *See* Section I.c. for further discussion.

[4]  (Gov.'s Mot. for Forfeiture ("Gov.'s Mot."), Docket Entry No. 610; Gov.'s Mem. in Supp. of Mot. for Forfeiture ("Gov.'s Mem."), Docket Entry No. 630.)

[5]  (Def.'s Opp'n to Gov.'s Mot. ("Def.'s Opp'n"), Docket Entry No. 628.)

1, 2.) Shen violated the pretrial release conditions of the August 2018 Bond six times before then Magistrate Judge Sanket J. Bulsara of the Eastern District of New York issued the August 2019 Revised Bond on August 7, 2019, modifying the release conditions of the August 2018 Bond to include, among other restrictions, home curfew with location monitoring and drug treatment counseling.[6] Shen continued to violate the pretrial release conditions set in the August 2019 Revised Bond, incurring six infractions, including for violating her location monitoring condition by leaving her residence without permission on several occasions and deviating from her approved location monitoring schedules, in addition to being arrested by the New York City Police Department for Assault in the 3rd degree, with intent to cause physical injury (Class A Misdemeanor).  (Pretrial Violation Mem. dated Dec. 8, 2022 1; Pretrial Violation Mem. dated Mar. 10, 2023 1.)

The Bonds[7] state "[t]his appearance bond may be forfeited if the defendant does not comply with the conditions of release set forth in this Order Setting Conditions of Release and Bond" and "the court may order a judgment of forfeiture against the defendant and each surety for the entire amount of the bond, including interest and costs."  (August 2018 Bond 1; April 2019 Revised Bond 1; August 2019 Revised Bond 1; February 2020 Revised Bond 1.)

   **b.  Shen's Sureties**

The August 2018 Bond listed five sureties, Chau Chung, Quyen Chung, Chen Zhang, Jessica Xiong, and Yiming Song, and listed Xiong's property.  (August 2018 Bond 1–3.)  The

---

[6]  (Min. Entry dated Aug. 7, 2019; August 2019 Revised Bond; Pretrial Violation Mem. dated Dec. 8, 2022 1, Docket Entry No. 519; Pretrial Violation Mem. dated Mar. 10, 2023 1, Docket Entry No. 538; PSR ¶ 3.)

[7]  The Court modified the August 2018 Bond on three subsequent occasions.  (August 2018 Bond; April 2019 Revised Bond; August 2019 Revised Bond; February 2020 Revised Bond.)  Each of the Bonds utilize the same form and are nearly identical.

subsequent three amendments to the August 2018 Bond changed the listed sureties.  First, the April 2019 Revised Bond removed Chau Chung and Quyen Chung as sureties and added Sui Mei Lam and Zhang Li Ping.  (April 2019 Revised Bond 1–2.)   The August 2019 Revised Bond removed Xiong and her property as surety.  (August 2019 Revised Bond 1–2.)  Lastly, the February 2020 Revised Bond removed Ping as surety and added Lam's property.  (February 2020 Revised Bond 1–2.)

The Bonds signed by each of the Sureties includes various warnings putting each on notice of their potential obligation to pay the full amount of the bond.  First, under the heading "Appearance Bond," the Bonds state "I, the undersigned defendant, and each surety who signs this bond, acknowledge that I have read this Appearance Bond and have either read all of the other conditions of release or have had those conditions explained . . . further acknowledge that I and my personal representatives, jointly and severally, are bound to pay the United States of America the sum of $[250,000] and that this obligation is secured with the below interest in the following property."  (August 2018 Bond 1; April 2019 Revised Bond 1; August 2019 Revised Bond 1; February 2020 Revised Bond 1.)  Second, the Bonds warn that the "appearance bond may be forfeited if the defendant fails to comply with any of the conditions set forth in this Order Setting Conditions of Release and Bond" and in that situation, "[t]he defendant and any surety who has signed this form also agree that the court may immediately order the amount of the bond surrendered to the United States, including any security for that bond."  (August 2018 Bond 1, 2; April 2019 Revised Bond 1; August 2019 Revised Bond 1; February 2020 Revised Bond 1.)  Lastly, on the additional sureties page of the Bonds, above each signature it states "[e]ach of the following additional surety or sureties acknowledges and agrees to pay the bond on the first page of this Order Setting Conditions of Release and Bond and, to the extent indicated below, to securing the bond with his/her/their interest in the property or properties described below."

(August 2018 Bond 3; April 2019 Revised Bond 2; August 2019 Revised Bond 2; February 2020 Revised Bond 2.)

In addition, when each Surety signed the relevant bond, they received further oral warnings from the respective judge, and indicated they understood the commitment they were undertaking. Sureties Song and Zhang signed the August 2018 Bond after Judge Orenstein "carefully . . . explain[ed] the conditions of release" and had "some questions for [the Sureties]." (Tr. of Aug. 7, 2018 Detention Hr'g 12–13, Docket Entry No. 613.) Judge Orenstein proceeded to ask both if they understood that each was "taking the risk that you will owe the Government 250,000 dollars if [ ] Shen violates the conditions of release" and both indicated they did. (*Id.* at 13.) Judge Orenstein also explained to Shen "[i]f you violate a single condition of release, you will . . . owe the Government 250,000 dollars" which the "Government will be able to garnish any wages that you may have . . . [and] the wages of anybody who signs the bond to collect that money." (*Id.* at 14.) After Shen indicated she understood, Judge Orenstein outlined the conditions of Shen's release, including that she was required to "return to court every time the case is called," "not commit any crime while [ ] on release," submit to "testing for substance abuse problems" at the discretion of Pretrial Services, and "not enter any unlawful gambling establishment[s]." (*Id.* at 14–17.) Twice more, Judge Orenstein confirmed with Shen that she understood that if she violated any of these conditions, she would owe the Government $250,000 and confirmed with the Sureties they understood the conditions of release and if any were violated, each would "be responsible for the entire debt of 250,000 dollars," to which all parties affirmed. (*Id.* at 18–19, 20–21.) Former Magistrate Judge Steven M. Gold of the Eastern District of New York repeated this process on April 29, 2019 when Lam was added as a surety on the April 2019 Revised Bond, confirming numerous times that she understood the risk she was taking and the obligation she was committing to. (Tr. of Apr. 29, 2019 Bond Hr'g 6, 10–11,

Docket Entry No. 614.)  Similarly, when Lam's property was added to the February 2020 Revised Bond, Magistrate Judge Robert M. Levy of the Eastern District of New York provided a warning and Lam stated she understood the risks that the Government could foreclose on the bond and the house.  (Tr. of Feb. 24, 2020 Bond Hr'g 6–7, Docket Entry No. 616.)

### c.  Shen's failure to self-surrender and subsequent plea

On January 5, 2025, the day before Shen was required to self-surrender to the BOP, Pretrial Services was alerted that Shen's location monitoring device had been disconnected in the vicinity of John F. Kennedy International Airport ("JFK") Terminal 5 (which services Air China), and Pretrial Services and her prior defense counsel were unable to contact her.  (Gov.'s Mem. 11.)  *See* Compl. 6, *Shen*, No. 25–CR–48; PSR ¶¶ 9–10, *Shen*, No. 25–CR–48, Docket Entry No. 13.  Footage later revealed "[s]hortly before cutting off her bracelet, [Shen] arrived at the airport with luggage, entered the airport briefly, and then exited, leaving with the individual who had brought her to the airport.  PSR ¶ 9, *Shen*, No. 25–CR–48.  Shen remained unaccounted for more than three weeks until the FBI located and arrested her on January 28, 2025, as she exited a hotel in Queens, New York.  (Gov.'s Mem. 11–12.)  PSR ¶ 11, *Shen*, No. 25–CR–48. On the day of her arrest, Shen was "observed both in person and on footage from the hotel . . . with her boyfriend," although the hotel room was not reserved in either name.  (Gov.'s Mem. 11–12.)  PSR ¶ 11, *Shen*, No. 25–CR–48.  At the time of her arrest, Shen was in possession of: "(1) two Bank of America cards in the name 'Giuxia Wang'; (2) a learner's permit with [Shen]'s photograph but in the name Guixia Wang; (3) a cellphone with pieces of tape on the back that read Guixia Wang and '646–299–4194'; (4) a driver's license in the name 'Meiqin Yang'; (5) a Visa card in the name Meiqin Yang; (6) a Resorts World rewards card in the name Meiqin Yang; (7) a receipt indicating a $5,000 payment to 'Guanghua Shen'; (8) a Visa card in the name 'Yun Q Q Cao'; (9) a debit card in the name 'Fei Huang'; (10) a debit card in the name 'Melissa Lee';

7

(11) a check made out to AB for $5,700"; and (12) a Bottega Venetta handbag.  (Gov.'s Mem. 11–12.)  PSR ¶ 12, *Shen*, No. 25–CR–48.

Shen was subsequently detained and indicted for failure to surrender, in violation of 18 U.S.C. §§ 3146(a)(2), (b)(1)(A)(i) and 3551 *et seq.*.  (Gov.'s Mem. 11–12.)  Order of Detention, *Shen*, No. 25–CR–48, Docket Entry No. 4; Indictment, *Shen*, No. 25–CR–48, Docket Entry No. 6. On March 21, 2025, Shen pleaded guilty to the failure to surrender charge.   Min. Entry dated Mar. 21, 2025, *Shen*, No. 25–CR–48.  On October 2, 2025, Judge Gonzalez sentenced Shen to 24 months in custody, to run consecutive to the undischarged term of custody imposed in this case, three years of supervised release, and a special assessment of $100.  Min. Entry dated Oct. 2, 2025, *Shen*, No. 25–CR–48; J. 2–3, *Shen*, No. 25–CR–48, Docket Entry No. 21.  Shen is currently serving her sentence.

## II.    Discussion

### a.    Standard of review

Rule 46(f) of the Federal Rules of Criminal Procedure governs bail forfeiture.  Fed. R. Crim. P. 46(f).  It specifies that "[t]he court must declare the bail forfeited if a condition of the bond is breached."  *Id.* 46(f)(1); *United States v. Gigante*, 85 F.3d 83, 85 (2d Cir. 1996) (per curiam) ("Rule 46([f])(1) explicitly authorizes forfeiture of a bail for 'breach of condition of a bond.'" (quoting Fed. R. Crim. P. 46(f)(1))); *see also United States v. Alrahib*, No. 22–13172, 2024 WL 4298263, at *3 (11th Cir. Sept. 26, 2024) ("Under Rule 46, a court *must* declare a bond forfeited if any conditions are breached."); *United States v. Gigante*, 166 F.R.D. 3, 4–5 (E.D.N.Y. 1996), *aff'd* 85 F.3d 83 (2d Cir. 1996) (The language of Rule 46(f)(1), which provides that "the district court shall declare a forfeiture of the bail" upon "a breach of condition of a bond," "embraces breaches of any condition of release.").   "The court may set aside in whole or in part a bail forfeiture upon any condition the court may impose if: (A) the surety later

surrenders into custody the person released on the surety's appearance bond; or (B) it appears that justice does not require bail forfeiture."[8] Fed. R. Crim. P. 46(f)(2); *United States v. Brooks*, 872 F.3d 78, 92 (2d Cir. 2017) ("The court may set aside in whole or in part a bail forfeiture upon any condition the court may impose if. . . it appears that justice does not require bail forfeiture." (quoting Fed. R. Crim. P. 46(f))); *United States. v. Hatfield*, No. 06–CR–0550, 2015 WL 3476927, at *2 (E.D.N.Y. June 2, 2015), *aff'd Brooks*, 872 F.3d 78 (same); *United States v. Carvajal*, 674 F. Supp. 973, 975 (E.D.N.Y. 1987) ("Rule 46([f]) confers broad discretion on this [c]ourt to 'remit in whole or in part' an order of forfeiture if it 'appears that justice does not require the forfeiture.'" (quoting Fed. R. Crim. P. 46(f)(2))).  If a court does not set aside a bail forfeiture, Rule 46(f)(3)(a) requires that it "must, upon the government's motion, enter a default judgment." Fed. R. Crim. P. 46(f)(3)(a); *see United States v. Jimenez*, No. 24–CV–16, 2025 WL 2178456, at *3 (D. Conn. Mar. 7, 2025) ("Rule 46(f) of the Federal Rules of Criminal Procedure lays out a three-step process for bail forfeiture.  First, th[e] [c]ourt 'must declare the bail forfeited if a condition of the bond is breached.'  The [c]ourt may then set aside the forfeiture if . . . it 'appears that justice does not require bail forfeiture.'  Ultimately, '[i]f [the court] does not set aside bail forfeiture' under Rule 46(f)(2), the Court *must* enter a default judgment upon such a motion.'" (quoting Fed. R. Crim. P. 46(f)(3)(A))). "The burden of establishing grounds for remission is on the party challenging the forfeiture."  *United States v. Gambino*, 17 F.3d 572, 574 (2d Cir. 1994) (citing *United States v. Egan*, 394 F.2d 262, 267 (2d Cir. 1968), *cert. denied,*

---

[8]  None of the sureties surrendered Shen into custody.  *See* Section II.c.iii.  As such, this Court only determines whether "justice does not require bail forfeiture."  Fed. R. Crim. P. 46(f)(2).  *See United States v. Clanton*, No. 13–CR–328, 2024 WL 1740555, at *1–2 (E.D.N.Y. Apr. 22, 2024) (declining to set aside bail forfeiture under Rule 46(f)(2)(A) because "no surety . . . surrendered [the defendant] into custody or otherwise assisted the government in securing [the defendant's] custody in connection with the bail violations," and instead continuing with the analysis under Rule 46(f)(2)(B)).

*Stuyvesant Ins. Co. v. United States,* 393 U.S. 838 (1968)); *see United States v. Ahmed*, No. 21-1193, 2022 WL 18717740, at *1 (1st Cir. Nov. 1, 2022) ("We note the burden [is] on the [defendant and co-surety challenging the forfeiture] in the proceedings below to prove that the bail forfeiture should not be set aside."); *Hatfield*, 2015 WL 3476927, at *2 ("The burden of establishing that justice requires setting aside bail forfeiture rests with the party seeking to challenge the forfeiture." (citing *Gambino*, 17 F.3d at 574)); *United States v. Blake*, No. 14–CR–312, 2014 WL 6606692, at *2 (E.D.N.Y. Nov. 19, 2014) ("The burden of establishing grounds to set aside or remit a forfeiture of bail rests with the defendant and sureties." (citing *Gambino*, 17 F.3d at 574)). "[The determination of whether to set aside bail forfeiture] lies within the discretion of the district court." *Hatfield*, 2015 WL 3476927, at *2 (citing *Gambino*, 17 F.3d at 574); *see Alrahib*, 2024 WL 4298263, at *3 ("District courts have 'virtually unbridled discretion' to remit bond forfeiture." (quoting *United States v. Diaz,* 811 F.2d 1412, 1415 (11th Cir. 1987))); *Egan*, 394 F.2d at 267 ("Discretion is vested in the district court with regard to forfeitures of bail bonds.").

### b. Bail forfeiture is warranted as Shen violated the terms of the Bonds numerous times and ultimately failed to surrender.

The Government argues that "[n]otwithstanding the [D]efendant's dozens of violations of her release conditions . . . [it] first moved to forfeit her bond on January 13, 2025 and only after she cut off her location monitoring device and fled rather than serve her sentence." (Gov.'s Mem. 18.)

Shen does not dispute that she breached the conditions of her release, by failing to surrender, failing the mandated drug tests, and violating the terms of her home confinement. (*See generally* Def.'s Opp'n.) She acknowledges that under Rule 46(f)(1), "the Court must declare bail forfeited if a condition of release is breached." (*Id.* at 4.) Shen argues, instead, that

"Rule 46(f)(2) permits the Court to set aside a forfeiture 'in whole or in part . . . upon such conditions as the court may impose,' if it appears that justice does not require forfeiture" (quoting Fed. R. Crim. P. 46(f)(2)), and "[t]he Court has broad discretion in determining whether to remit forfeiture." (*Id.*)

"[A] bail bond is a civil contractual agreement between the government and the surety on behalf of the criminal defendant, and, if a forfeiture is ordered the surety becomes the debtor of the government." *Brooks*, 872 F.3d at 93–94 (quoting *United States v. Santiago*, 826 F.2d 499, 502 (7th Cir. 1987)); *see Alrahib*, 2024 WL 4298263, at *3 ("An appearance bond is 'a contract between the government on one hand and a principal and his surety on the other.'" (quoting *United States v. Miller*, 539 F.2d 445, 447 (5th Cir. 1976))). "The elementary purpose of a bail bond is, of course, to insure the appearance of the accused to answer the indictment and to submit to a trial and the judgment of the court thereon." *United States v. Fook Dan Chin*, 304 F. Supp. 403, 405 (S.D.N.Y. 1969); *see Cohen v. United States*, 82 S.Ct. 526, 528 (1962) ("The purpose of a bail bond is to insure that the accused will reappear at a given time by requiring another to assume personal responsibility for him, on penalty of forfeiture of property."). Pursuant to Rule 46(f)(1), "[t]he court must declare the bail forfeited if a condition of the bond is breached." Fed. R. Crim. P. Rule 46(f)(1); *Alrahib*, 2024 WL 4298263, at *3 ("Under Rule 46, a court *must* declare a bond forfeiture if any conditions are breached."); *Gigante*, 85 F.3d at 85 (same). "A bail bond and its collateral may be forfeited not only for the defendant's failure to appear, but also for other violations of bond conditions, including the defendant's commission of a crime." *Brooks*, 872 F.3d at 92 (quoting *Gigante*, 85 F.3d at 85); *see United States v. Stathakis*, No. 04–CR–790, 2007 WL 3124703, at *3 (E.D.N.Y. Oct. 24, 2007) (collecting cases) ("[T]he majority of courts have concluded that forfeiture of the bond under Rule 46(f) is an appropriate sanction for the violation of any condition of release, whether that condition relates

to the defendant's appearance in court or not."). "[C]ourts have upheld forfeiture for violation of the 'break no laws' condition of a bond, and for violation of travel restrictions." *Stathakis*, 2007 WL 3124703, at *3 (internal quotation marks and citations omitted). "[Rule 46(f)] does not require that sureties be involved in the violation of the terms of the bond order to forfeit their interests . . . [a]ll that is required for the security (or the bond) to be forfeited is if that the defendant violate one of the terms." *Brooks*, 872 F.3d at 95.

Each of Shen's breaches of her bail conditions, including her failing of the mandated drug tests, violating the court's order to "not enter illegal gambling establishments," violating the court's imposed home confinement by failing to abide by her approved leave schedule by going to unapproved locations and/or at unapproved times, and violating the bail requirement that she "must not violate any federal, state or local law while on release" by committing assault in the third degree, is sufficient to support the Court ordering the forfeiture of her bail bond. *See Brooks*, 872 F.3d at 84–85, 95 (affirming forfeiture of bond where the defendant violated the conditions of release "by clear and convincing evidence"); *United States v. Clanton*, No. 23–CR–328, 2024 WL 1740555, at *1, 4 (E.D.N.Y. Apr. 22, 2024) (ordering forfeiture in the full amount of the bond for defendant's failure to report to Pretrial Services as directed, traveling outside of the City of New York, and failing to submit to location monitoring and home incarceration, all in violation of his bail bond conditions); *United States v. Shields*, No. 22–CR–526, 2024 WL 3925829, at *6 (E.D.N.Y. Aug. 23, 2024) (ordering forfeiture where defendant "violated several conditions of his bail bond, namely, that he was subject to a location restriction program with location monitoring as directed by [Pretrial Services], failure to allow home visits at his residence, and committing a crime while out on release"); *United States v. Alli*, No. 22–CR–395, 2024 WL 3520450, at *7–8 (E.D.N.Y. July 24, 2024) (finding that the defendant "forfeited his $250,000.00 bail under Federal Rule of Criminal Procedure 46(f)(1)" when he violated a

"mandatory condition of his bail"); *Hatfield*, 2015 WL 3476927, at *1–2 (forfeiting bail where the "[g]overnment presented convincing evidence of three separate, willful, and substantial violations of the [b]ail [r]elease [o]rder"); *United States v. Gallego*, No. 02–CV–5987, 2003 WL 1193536, at *1–2 (E.D.N.Y. Jan. 29, 2003) (forfeiting bail where it was uncontested that defendant breached the conditions of his bail by "fail[ing] to return to his parent's house by his assigned curfew" and later "fle[eing] to Colombia").

Although the Government could have sought forfeiture for any of her prior violations, it only moved to do so following Shen's failure to surrender on January 6, 2025.  (J.)  As noted above, Shen pleaded guilty for her failure to surrender in violation of 18 U.S.C. §§ 3146(a)(2), (b)(1)(A)(i) and 3551 *et seq.*.  *See* Indictment, *Shen*, No. 25–CR–48; Min. Entry dated Mar. 21, 2025.  Courts in this circuit typically order bail forfeiture when defendants fail to appear for court-ordered events.  *See Gambino*, 17 F.3d at 574 (affirming the court's order "requiring the sureties to forfeit the full amount of the $2,000,000 bond" when the defendant "violated the bail agreement and [ ] fled justice"); *United States v. Rufai*, No. 18–CR–201–01, 2022 WL 2751857, at *1 (S.D.N.Y. July 13, 2022) (ordering forfeiture of bail when defendant failed to surrender for his term of imprisonment and instead fled to Ghana); *Blake*, 2014 WL 6606692, at *2–3 (finding defendant "clearly breached a condition of his bond" by failing to appear for his bail hearing); *Carvajal*, 674 F. Supp. at 974 (forfeiting bail where defendants disappeared and failed to appear for subsequent court appearances).  Because Shen failed to surrender to serve her sentence, the Court orders the forfeiture of Shen's bail in the full amount of $250,000.

### c.   The *Gambino* factors weigh against remission of the bond's forfeiture.

The Government argues that each of the *Gambino* factors[9] weigh in favor of total forfeiture of the bond because: (1) Shen's "many breaches were willful," (Gov.'s Mem. 19–20); (2) the Government "unnecessarily expended resources" in locating and eventually apprehending her, in addition to obtaining three search warrants and issuing numerous subpoenas, (*id.* at 20–21); (3) Shen has presented no mitigating circumstances other than her "unsupported claim that she wanted to arrange for a funeral," (*id.* at 21); (4) "[t]he [S]ureties did not attempt to assist in locating or apprehending the defendant," (*id.* at 21); and (5) while the Sureties were friends and associates of the Shen, they were "carefully advised of their responsibilities by the relevant magistrate judges," (*id.* at 22–23).  The Government also argues that the Court should consider the deterrence impact of such forfeiture on "maintaining the credibility of the bail system . . . because since 2021, a rash of defendants in this district have fled after being released on conditions."  (*Id.* at 23 n.18.)

Shen argues that, based on the totality of the circumstances, the *Gambino* factors weigh in favor of remission because: (1) her breach resulted from "a moment of intense personal grief and emotional distress" as her long-term partner passed away on January 6, 2025, (Def.'s Opp'n 5); (2) there was minimal expense and prejudice to the Government because Shen was located locally three weeks after absconding, (*id*. at 6); (3) there are mitigating factors present as Shen decided to remain with her long-term partner "during his final moment and to arrange his

---

[9]  *See United States v. Gambino*, 17 F.3d 572, 574 (2d Cir. 1994) ("The court must consider several factors in evaluating the remission motion: 'whether the defendant's breach of the bond conditions was willful; the cost, inconvenience and prejudice suffered by the government as a result of the breach; . . . any explanation or mitigating factors presented by the defendant; . . . whether the surety has assisted in the apprehension of the defendant; and whether the surety is a professional or a friend or member of the defendant's family."  (quoting *United States v. Carvajal*, 674 F. Supp. 973, 974 (E.D.N.Y. 1987))).

14

funeral," (*id.*); (4) "[t]here is no evidence that any of [ ] Shen's [S]ureties were involved in her decision to abscond or aided her in any way," (*id.*); and (5) all of Shen's Sureties are friends, not professional sureties, (*id.*).  Shen further argues justice does not require forfeiture because she "has already pled guilty to her failure to surrender and is currently in custody." (*Id.*).

Second Circuit case law directs that "[t]he district court must evaluate the following factors in deciding a remission of bond motion: whether the defendant's breach of the bond conditions was willful; the cost, inconvenience and prejudice suffered by the government as a result of the breach; . . . any explanation or mitigating factors presented by the defendant; . . . whether the surety ha[d] assisted in the apprehension of the defendant; and whether the surety is a professional or a friend or member of the defendant's family."  *Brooks*, 872 F.3d at 92 (quoting *Gambino*, 17 F.3d at 574); *Gambino*, 17 F.3d at 574 (quoting *Carvajal*, 674 F. Supp. at 974); *Hatfield*, 2015 WL 3476927, at *3 (quoting *Gambino*, 17 F.3d at 574).  District courts are also required to consider "the deterrence value of total forfeiture."  *Gambino*, 17 F.3d at 574; *Clanton*, 2024 WL 1740555, at *2 (quoting *Gambino*, 17 F.3d at 574); *Rufai*, 2022 WL 2751857, at *1 (quoting *Gambino*, 17 F.3d at 574); *Hatfield,* 2015 WL 3476927, at *3 (quoting *Gambino*, 17 F.3d at 574).  "Notably, however, the [c]ourt cannot consider . . . the financial hardship of the [surety] because it is the interests of justice — and not the interests of [the surety] — which must be considered."  *Hatfield*, 2015 WL 3476927, at *3 (quoting *Carvajal*, 674 F. Supp. at 974) (alterations in original) (internal quotation marks and citation omitted); *see Blake*, 2014 WL 6606692, at *4 ("The cases are clear, however, that the court may not consider the financial plight of the sureties, since it is the interests of justice, not of the sureties, that must be considered." (citing *Gallego*, 2003 WL 1193536, at *3)).  "In making the decision as to what, if any, part of the forfeiture to set aside, the court has an obligation to strike a balance between the competing interests of cost to the government and deterrence to defendants and sureties."

15

*Stathakis*, 2007 WL 3124709, at *4 (citing *United States v. Sharrocks*, No. 87–CR–81, 1989 WL 97890, at *16 (S.D.N.Y. Aug. 11, 1989); *United States v. Green*, No. 86–CR–288, 1989 WL 153042, at *4 (S.D.N.Y. Dec. 12, 1989)); *see Blake*, 2014 WL 6606692, at *4 ("The effectiveness of bail . . . depends upon . . . enforcement . . . 'if sureties could routinely escape liability . . . their signatures would become largely meaningless.'" (quoting *United States v. Santana*, No. 06–CR–1083, 2009 WL 1321783, at *1 (S.D.N.Y. May 8, 2009))).

### i. Willfulness, explanation for flight and/or mitigating factors

The Government argues "[t]he willfulness of [Shen's] flight is clear because she did not simply have an attack of 'nerves' at the last moment," but instead "made plans at least eight weeks in advance to flee" as she had "obtained multiple sets of fraudulent identification documents in an assumed identity, . . . obtained banking accounts in this identity, . . . planned and acted out a choreographed performance to provide the false impression that she had fled the country and . . . ignored numerous calls from Pretrial [Services] and her former lawyer."[10] (Gov.'s Mem. 19.) Together with Shen's other repeated violations of her bail conditions, the Government contends that "[h]er actions make plain her bad faith and desire to permanently escape justice, and . . . makes clear just how fully [Shen] intended to flout the law and (continue to) make a mockery of the right to bail that she had been afforded." (*Id.* at 19, 21.) The Government further argues that Shen's "unsupported claim that she wanted to arrange [for Mr. Tam's] funeral" is the only potential mitigating circumstance or explanation presented but is inconsistent with her actions. (*Id.* at 21.) First, Shen did not "simply stay at her home so she could make these purported arrangements" but instead she "left her home, choreographed a flight

---

[10] Shen's arguments inextricably tie together the two factors of willfulness and explanation for flight or mitigating factors, as she relies on the same arguments to support her contention that these two factors weigh in favor of remission. The Court therefore discusses them together.

to China at JFK and stayed at a hotel under a false name, weeks after opening bank accounts and obtaining a New York State's learner's permit in an assumed name and thereafter stopped using the phone that Pretrial was aware of." (*Id.*) "[I]f [Shen] simply needed to arrange for a funeral, she would not have been on the run for weeks . . . and would not have discussed using one of her fraudulently obtained identification documents in another's name to avoid arrest and continue her flight." (*Id.*) Second, "the Court has been very accommodating with [Shen]" during her initial sentencing that "there is absolutely no reason for [Shen] to believe that . . . the Court would not have allowed her additional time to surrender to serve her sentence." (*Id.*) The Government contends that Shen's actions are "consistent with a desire to permanently avoid serving her sentence and is inconsistent with the need to merely arrange for a funeral." (*Id.*)

Shen argues that while her "breach may be considered willful, it arose from a moment of intense personal grief and emotional distress" because "[a]t the time of her failure to surrender, her long-time partner, Peter Tam, was critically ill and passed away on January 6, 2025 — the very day of her scheduled surrender."[11] (Def.'s Opp'n 5.) "Rather than flee, [ ] Shen remained in the jurisdiction to plan Mr. Tam's funeral and attend his burial," and ultimately "did not intend to avoid serving her sentence permanently." (*Id.* at 5–6) She argues that she "made a deeply emotional, though unwise, decision to remain with Mr. Tam during his final moments and to arrange his funeral." (*Id.*) Instead, "[h]er actions were motivated by compassion and personal loss, not by contempt for the Court's authority." (*Id.*)

---

[11] The PSR submitted in *Shen*, No. 25–CR–48, supports the fact that Shen "was in a romantic relationship with Peter Ta[m] from approximately 2020 to January 2025" and that he "passed away . . . in January of 2025." PSR ¶ 39, *Shen*, No. 25–CR–48, Docket Entry No. 13. Shen reported that she and "Mr. Ta[m] shared a very good relationship, and they spoke daily." *Id.*

Shen's argument that her flight was motivated by "intense personal grief" is unpersuasive. First, acknowledging the death of Mr. Tam on January 6, 2025, Shen has provided no explanation as to why her location monitoring device was disconnected or why she was located near JFK on January 5, 2025. Second, the Court initially allowed Shen to select her self-surrender date. (*See* Tr. of Sent'g Hr'g 29:9–32:3, Docket Entry No. 634 ("I'll give her as much time as she needs . . . [s]he can have as much time as she wants. I want her to be able to make her home circumstance as best as she can before she has to surrender.").) Thus, to the extent Shen needed additional time to self-surrender, she could have informed the Court of Mr. Tam's critical illness and sought to obtain additional time to self-surrender in order to plan his funeral arrangements. Instead, Shen failed to answer or return any of the phone calls from Pretrial Services or her former attorney. Third, Shen's argument that she remained in the jurisdiction to plan her long-time partner Mr. Tam's funeral and attend his burial, is not supported by Shen's actions between January 5, 2025 and January 28, 2025, when the FBI located and arrested her. She did not remain at home to plan these arrangements but instead traveled to JFK before disconnecting her location monitoring device and later stayed at a hotel in Queens, New York, under a false name for three weeks. PSR ¶ 11, *Shen*, No. 25–CR–48. Fourth, while the Court is sympathetic to the loss of Shen's partner, Shen has provided no case law to support her argument that the "intense grief" she experienced should result in remission of the forfeiture. Lastly, Shen's contention that her failure to surrender was plainly motivated by "intense grief" is inconsistent with the multiple sets of identification and bank accounts with fraudulent names found on her at the time of her arrest, as well as her long and extensive history of ignoring the terms of her bail release and the conditions of the Bonds. For these reasons, the Court is not persuaded by the proffered "explanation" for Shen's flight. Her actions appear more in line with her history of disregard for the law, considering her numerous prior bail violations. *See United*

*States v. Ruiz-Solis*, No., 2022 WL 118644, at *2 (9th Cir. Jan. 12, 2022) (affirming the district court's "refus[al] to set aside the otherwise mandatory forfeiture" where defendant violated the conditions of his release by "abscond[ing] from supervision" and his shown "pattern . . . of disregard for the [c]ourt's orders").

Shen's decision to flee was willful and she has presented no mitigating factors or explanation to find otherwise.  *See Rufai*, 2022 WL 2751857, at *2 (finding defendant's breach of the bond conditions willful when he fled to Ghana instead of self-surrendering); *Blake,* 2014 WL 6606692, at *3 (finding the defendant's failure to appear, when he "knew he was facing the possibility of remand," and remaining at large for more than a month was a willful breach of his bond conditions); *Gallego,* 2003 WL 1193536, at *2 (finding the defendant's breach to be willful where no explanation for breach or presentation of mitigating factors was offered as defendant's flight to Colombia could "[b]y no means . . . be seen as the result of misunderstanding, carelessness or oversight" where "[t]he evidence show[ed] that he simply absconded to avoid prosecution" ); *Carvajal*, 674 F. Supp. at 974 (defendants' flight found to be willful where "[n]o one ha[d] offered an innocent explanation for the disappearance of defendants" nor presented any mitigating factors).

### ii.    Cost, inconvenience and prejudice to the Government

The Government maintains that it "unnecessarily expended resources to investigate [Shen]'s whereabouts and track her to a hotel over the course of [more than] three weeks, where she was eventually apprehended."  (Gov.'s Mem. 20.)  In doing so, members of the FBI visited [JFK], [Shen]'s former Queens residence, as well as other locations associated with her to locate her," and obtained three search warrants and numerous subpoenas to aid in their search.  (*Id.*)

Shen argues that "the [G]overnment incurred minimal expense or prejudice in locating and detaining" her because she was "returned to custody approximately three weeks after

absconding" and "was apprehended locally, avoiding the need for extradition or out-of-state apprehension efforts." (Def.'s Mem. 5.)

"In determining whether a remission is called for, the court must consider the amount of delay caused by the defendant's default, the expenses incurred by the government in attempting to locate and secure the presence of the defendant, the stage of the proceedings at the time of disappearance, and the relative efforts of the government . . . in attempting to locate the fugitive." *Fook Dan Chin*, 304 F. Supp. at 405–06 (collecting cases). However, the government need "not quantify, in absolute terms, the cost incurred as a result of [the defendant's] breach of the bail agreement." *Hatfield*, 2015 WL 3476927, at *3 n.1; *see Blake,* 2014 WL 6606692, at *3 ("Although the government does not quantify the costs it incurred searching for defendant, it does assert that substantial resources were expended locating him: members of the fugitive task force went to defendant's former residence, obtained pen registers and search warrants and analyzed information obtained pursuant to them, and developed a tactical plan for taking defendant into custody once they located him."). Courts have held that the Government's various actions taken to apprehend a defendant who has fled are sufficient to show cost, inconvenience and prejudice to the Government and undermines a claim for remission. *See Gambino*, 17 F.3d at 574–75 (affirming the district court's consideration of the government's efforts in searching for and locating the defendant at a hotel residence in a different state twenty days after he failed to appear in court weighed in favor of full forfeiture); *Hatfield*, 2015 WL 3476927, at *3 ("Notwithstanding that [defendant's] apprehension was straightforward, the [g]overnment still suffered prejudice 'as a result of the breach' of [the defendant's] bail agreement." (quoting *Gambino*, 17 F.3d at 574)); *Blake*, 2014 WL 6606692, at *3 (finding that the government's actions to locate and detain defendant who failed to appear weighed against remission); *cf. Fook Dan Chin*, 304 F. Supp. at 405–06 (finding that this factor weighed in favor

20

of remitting forfeiture because "the delay in bringing defendant to trial was insubstantial and that expenses to the government were negligible").

Despite Shen's contention that the Government "incurred minimal expense or prejudice in locating and detaining" her, the Government undertook extensive efforts during the three weeks Shen remained at large. The Government's actions in this case are similar to the government's actions in *Blake*, 2014 WL 6606692, where the court found this favor weighed against remission where the government deployed agents to locate and detain the defendant, obtained and executed search warrants and subpoenas, and analyzed that information to aid their efforts. *Id.* at *3. Further, as a result of Shen's flight, the Government incurred additional expenses requiring the court to hold further proceedings in relation to her failure to surrender, which resulted in Shen subsequently pleading guilty to the charge and receiving an additional sentence.[12] *Shen*, No. 25–CR–48; *see Alrahib*, 2024 WL 4298263, at *4 (affirming the district court's decision weighing this factor in favor of forfeiture where defendant's bail violation required the government "to bring a second indictment . . . which resulted in even more hearings and briefs").

### iii.    Sureties' assistance in apprehension and their relationship to Shen

The Government contends that the Sureties did not attempt to assist in locating or apprehending Shen. (Gov.'s Mem. 21.) In addition, although the Sureties are personal friends and acquaintances of Shen's, the Government argues this factor nevertheless weighs against remission because the justification for considering the status of the Sureties is not at play here. (*Id.* at 22.)

---

[12] The Court notes that Shen provides no case law in support of her contention that the Government's actions should be considered "minimal" and be weighed in favor of remission.

21

Shen does not dispute that her Sureties did not attempt to assist in locating her, (Def.'s Opp'n 6), and instead argues "[t]here is no evidence that any of [the] [S]ureties were involved in her decision to abscond or aided her in any way," (*id.*).[13] Shen also does not dispute that the Sureties are her personal friends and acquaintances. (*Id.*)

"The rationale for considering [the surety's relationship to the defendant] is that nonprofessionals may not fully comprehend the risks incurred when executing a bail bond as a surety." *Blake*, 2014 WL 6606692, at *3 (citing *Gallego*, 2003 WL 1193536, at *2); *Gallego*, 2003 WL 1193536, at *2 ("The reasoning behind the consideration of this factor . . . had been said to lie in the fact that nonprofessional sureties may not fully comprehend the risk associated with posting a bail bond."). Where the sureties are "carefully advised of their responsibilities," and/or explained "the consequences of posting the bond" by a judge, this factor "is not a compelling consideration." *Blake*, 2014 WL 6606692, at *3; *Gallego*, 2003 WL 1193536, at *2; *see Clanton*, 2024 WL 1740555, at *4 (describing the discussion the sureties had with the judge

---

[13] There is no dispute that the Sureties did not attempt to assist in locating or apprehending Shen. (Gov.'s Mem. 21; Def.'s Opp'n 6.) Shen argues, however, that "[t]here is no evidence that any of [the] [S]ureties were involved in her decision to abscond or aided her in any way," (Def.'s Opp'n 6), but that is not the appropriate inquiry. *See United States v. Brooks*, 872 F.3d 78, 95 (2d Cir. 2017) ("[Rule 46(f)] does not require that sureties be involved in the violation of the terms of the bond order to forfeit their interests . . . [a]ll that is required for the security (or the bond) to be forfeited is that the defendant violated one of the terms."). As courts in this Circuit have stated, this factor weighs against remission where there is no evidence that a surety provided assistance to the government. *See Clanton,* 2024 WL 1740555, at *3 (finding this factor weighed against remission where there was "no representations that any of the sureties [ ] assisted with apprehending [the defendant]"); *United States v. Blake*, No. 14–CR–312, 2014 WL 6606692, at *3 (E.D.N.Y. Nov. 19, 2014) (same); *Carvajal*, 674 F. Supp. at 974 (same); *cf. United States v. Gallego*, No. 02–CV–5987, 2003 WL 1193536, at *2 (E.D.N.Y. Jan. 29, 2003) (noting that this factor would "weigh heavily in support of the sureties' request for remission" because "[t]hey have provided all possible assistance to the government in apprehending [the defendant], and indeed through their own efforts have located him and provided the government with his address in Colombia [where he fled to]"); *United States v. Fook Dan Chin*, 304 F. Supp. 403, 406 (S.D.N.Y. 1969) ("[T]he surety's continuing efforts both before and after forfeiture which led directly to the defendant's apprehension" weighed in favor of at least partial remission.).

in which the court found each "knowingly and voluntarily" signed the bond and "understood the risk of doing so"). "Moreover, this factor, standing alone, has been held to be insufficient to set aside a forfeiture of bail." *Blake*, 2014 WL 6606692, at *3 (citing *United States v. Billini*, No. 99–CR–156, 2006 WL 1586553, at *2 (S.D.N.Y. June 8, 2006)); *see Hatfield*, 2015 WL 3476927, at *4 ("This factor [of the nature of the sureties] is not dispositive.").

The Judges explained to the Sureties the risks involved in signing the Bonds and there is no evidence that they did not understand these risks. At the hearings during which each Surety signed their respective bail bond, the Magistrate Judge thoroughly outlined the risks they were undertaking in signing the bond and did so numerous times. (*See* Tr. of Aug. 7, 2018 Detention Hr'g; Tr. of Apr. 29, 2019 Bond Hr'g; Tr. of Feb. 24, 2020 Bond Hr'g.) Each time, the Sureties stated they understood and accepted those commitments. In *Clanton*, 2024 WL 1740555, the court found that such warnings were sufficient to find that "each of the five sureties knowingly and voluntarily signed [the] bond to secure [the defendant's] bail, and each surety understood the risk of doing so." *Id.* at *4. At the bail hearing, the judge "specifically advised [each surety] that if [the defendant] violates a condition, or if he doesn't come to court, the government could seek to collect . . . up to [the full bond amount]" and, in addition to the defendant confirming, "[e]ach of the sureties explicitly confirmed on the record that they understood [the judge's] explanation of their obligations and the risks associated with signing the bond if [the defendant] violated any condition of his bond or failed to appear before [the] [c]ourt." *Id.* (internal quotation marks and citations omitted). Similarly, Judges Orenstein, Gold and Levy explained the risks to the Sureties, and Shen and each Surety confirmed numerous times on the record that they understood the risks and obligations. (*See* Tr. of Aug. 7, 2018 Detention Hr'g; Tr. of Apr. 29, 2019 Bond Hr'g; Tr. of Feb. 24, 2020 Bond Hr'g.) Thus, the Court finds that Shen and the Sureties knowingly and voluntarily signed Shen's bond and understood the risk they took in doing so.

23

*See Clanton*, 2024 WL 1740555, at *4 (finding that the surety's understanding of the risks they were undertaking allowed the court to not weigh the sureties' relationship as friends of the defendant in favor of remission); *Blake*, 2014 WL 6606692, at *3 (because "the sureties were carefully advised of their responsibilities by" the magistrate judge, "the fact that the sureties were members of defendant's family and not professionals was 'not a compelling consideration'" (quoting *Gallego*, 2003 WL 1193536, at *2)); *Gallego*, 2003 WL 1193536, at *2 (finding that the "Magistrate Judge explained to the sureties the consequences of posting the bond, and [the defendant] indicated that he understood . . . this factor, while favoring the sureties, is not a compelling consideration"). Moreover, even if this factor were to support setting aside the bail forfeiture despite such policy considerations, this alone is not dispositive. *Clanton*, 2024 WL 1740555, *4–5 (noting that while the sureties were personal friends, the court found "that the preponderance of the six factors and the interests of justice weigh[ed] in favor of entering a judgment of default on the forfeited [full bond amount] . . . against [the defendant and the sureties] jointly and severally"); *Rufai,* 2022 WL 2751857, at *2 (finding that despite the fact that the sureties are members of the defendant's family and community, the "preponderance of the six factors . . . favor[ed] forfeiture, as d[id] the interests of justice"); *Hatfield*, 2015 WL 3476927, at *4 (finding that while sureties were the defendant's family members, "[t]his factor is not dispositive"); *Blake*, 2014 WL 6606692, at *4 (same); *Billini*, 2006 WL 1586553, at *2 (same).

### iv.   Deterrence considerations

Lastly, the Government argues that deterrence considerations further support forfeiture of the bond. (Gov.'s Mem. 23 n.18.) Specifically, it argues the Court should consider the "rash of defendants in this district [who have] fled after being released on conditions" since 2021 and that

such forfeiture in this case would assist in "maintaining the credibility of the bail system in this district."  (*Id.*)

Shen argues that "[j]ustice does not require forfeiture" as she has "already pled guilty to her failure to surrender and is currently in custody."  (Def.'s Opp'n 6.)

There are two predominant deterrence considerations.  The first is specific to "high-profile narcotics and racketeering cases."  *Gambino*, 17 F.3d at 575 ("We believe that the deterrence value served by total forfeiture is especially important in high-profile narcotics and racketeering cases such as the instant one." (citing *United States v. Agueci,* 379 F.2d 277, 278 (2d Cir. 1967) (per curiam), *cert. denied,* 389 U.S. 897 (1967))); *Rufai*, 2022 WL 2751857, at *2 (quoting *Gambino*, 17 F.3d at 575); *see Clanton,* 2024 WL 1740555, at *4 ("[T]he deterrent value served by total forfeiture is especially important in cases such as the instant one, involving serious charges of a Hobbs Act conspiracy and several attempted and actual Hobbs Act robberies.").  The second is where "'the defendant[] [ ] flee[s], and remain[s] [a] fugitive[ ] from justice,' a decision to set aside the bail forfeiture 'at this time, would thwart the purpose of bail bonds, which is to secure the defendant's presence.'" *Clanton*, 2024 WL 1740555, at *4 (alterations in original) (quoting *Carvajal*, 674 F. Supp. at 974).  However, the absence of such factor, *i.e.,* where the defendant has been apprehended, does not weigh *against* forfeiture.  *See Rufai*, 2022 WL 2751857, at *2 ("[F]orfeiture of a bond is required whenever a condition of the bond is breached, whether or not the defendant is eventually apprehended."); *Blake*, 2014 WL 6606692, at *4 (finding that while the defendant had been apprehended and was before the court, "this distinction [was] not controlling"); *Gallego*, 2003 WL 1193536, at *4 ("The modern cases in this circuit addressing the issue of remission or discharge have all denied the requested relief, *even when the defendant had ultimately appeared*." (emphasis added)).

25

Shen pleaded guilty in connection with a large scale and elaborate drug trafficking and illegal gambling ring, in which twelve individuals, including Shen, were arrested for drug distribution, conspiracy, extortion, and illegal gambling crimes.  This serious and widespread underlying scheme is the type of "high-profile narcotics and racketeering case[]" in which bail forfeiture would assist in deterring the underlying conduct as well as the continued criminality in cases where courts allow bail.  (*See* Gov.'s Mem. 23 n.18 (listing numerous cases in this district since 2021 where defendants have fled after being released on bail conditions).)  *Gambino,* 17 F.3d at 573–75 (holding that district courts should consider the high "deterrence value of total forfeiture" in similar cases where the defendant was charged with numerous narcotics and racketeering violations); *Clanton*, 2024 WL 1740555, at *4 (finding a high deterrence value where the defendant was charged with "Hobbs Act conspiracy and several attempted and actual Hobbs Act robberies"); *Hatfield*, 2015 WL 3476927, at *4 (finding forfeiture would have an important deterrent effect as the case garnered a lot of attention and "would increase the likelihood that financial disclosure and monitoring conditions imposed as a condition of bail will thwart execution of even the most carefully crafted underground asset-sheltering plan"); *cf. Rufai*, 2022 WL 2751857, at *1–2 (finding the sole defendant who pleaded guilty to conspiracy to commit wire fraud had "not committed the kind of 'high-profile' crime for which deterrence is 'especially important'").  Further, while Shen's contention that there is little deterrence value since she has already pleaded guilty to failure to surrender and is currently incarcerated does weigh in her favor, it is not enough to overcome all the other factors that weigh against remission.

### III.  Conclusion

For the foregoing reasons, the Court grants the Government's motion to enforce forfeiture and finds that a preponderance of the *Gambino* factors weigh against remission.

Accordingly, the Court requests that the Clerk of the Court enter default judgment on the $250,000 bond and orders the forfeiture of the bond in its entirety to be enforced against Defendant Shen. The Court defers entry of default judgment and enforcement of the bond against the Sureties, Chen Zhang, Siu Mei Lam, and Yiming Song, and directs the Government to determine and submit to the Court each of the Sureties' current addresses so that the Court can provide notice to them in advance of the entry of any judgment.

Dated:  October 27, 2025
       Brooklyn, New York

                     SO ORDERED:


                     _____/s MKB_____
                     MARGO K. BRODIE
                     United States District Judge