**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA

-against-

GUANGHUA SHEN,

Defendant,

-and-

CHEN ZHANG,
SIU MEI LAM, and
YIMING SONG,

Sureties.

**REPORT AND RECOMMENDATION**

**18-CR-302 (MKB)**

**TISCIONE, United States Magistrate Judge:**

Sureties Chen Zhang, Siu Mei Lam, and Yiming Song signed a $250,000 bail bond securing the release of Defendant Guanghua Shen ("Defendant"). After Defendant was convicted and sentenced, she failed to self-surrender in violation of her bail conditions, and the Government moved for forfeiture of the bond. On October 27, 2025, the Court directed the Clerk of Court to enter default judgment on the bond against Defendant and ordered the forfeiture of the bond to be enforced against Defendant, but it deferred on the issue of whether to enter judgment and enforce forfeiture of the bond against the Sureties. For the reasons discussed below, this Court recommends entry of judgment and enforcement against the Sureties.

## BACKGROUND

The facts in this matter are fully set forth in the Court's October 27, 2025 Memorandum and Order, ECF No. 636 (the "10/27/25 Mem. & Order"). To summarize, on June 14, 2018, Defendant was charged with (1) conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846, (2) distribution and possession with intent to distribute methamphetamine, in violation of 21 U.S.C.

§§ 841(a)(1) and 841(b)(1)(C), and (3) operating an illegal gambling business, in violation of 18 U.S.C. § 1955(a). Indictment ¶ ¶ 1, 5, 14. On August 7, 2018, Defendant appeared before former Magistrate Judge James Orenstein for a bail hearing and was subsequently released on a two hundred and fifty thousand dollar ($250,000) bail bond secured by property and cosigned by five sureties (the "August 2018 Bond"). Min. Entry dated Aug. 7, 2018, ECF No. 112.

The sureties listed on the August 2018 Bond were Chau Chung, Quyen Chung, Chen Zhang, Yiming Song, and Jessica Xiong, as well as Xiong's property. August 2018 Bond 1-3. The August 2018 Bond was later modified three times. First, in April 2019, Chau Chung and Quyen Chung were replaced by Sui Mei Lam and Zhang Li Ping as sureties. Min. Entry dated Apr. 22, 2019, ECF No. 180; Min. Entry dated Apr. 29, 2019, ECF No. 183; Amended Bond Dated 4/29/2019, appended to Order Setting Conditions of Release, ECF No. 114–2 (the "April 2019 Revised Bond"). Then, in August 2019, Xiong and her property were removed as surety, and Defendant was placed under home detention. Min. Entry dated Aug. 7, 2019, ECF No. 234; Order Setting Conditions of Release, ECF No. 235 (the "August 2019 Revised Bond"). Finally, in February 2020, Ping was removed as surety and Lam's property was added. Min. Entry dated Feb. 24, 2020, ECF No. 341; Amended Bond Dated 2/24/2020, appended to Order Setting Conditions of Release, ECF No. 114–3 (the "February 2020 Revised Bond"). The February 2020 Revised Bond is the current operative bond and lists three sureties: Chen Zhang, Yiming Song, and Siu Mei Lam (each, a "Surety", collectively, the "Sureties").

On August 1, 2019, the grand jury returned a superseding indictment charging Defendant with (1) conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(b)(1)(A)(viii) and 846, (2) distribution and possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and

841(b)(1)(C), and (3) operating an illegal gambling business, in violation of 18 U.S.C. § 1955(a). (Sup. Ind. ¶¶ 4, 6, 8, ECF No. 168.) On September 20, 2019, pursuant to a plea agreement, Defendant pleaded guilty to conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(b)(1)(A)(viii) and 846. Min. Entry dated Sept. 20, 2019, ECF No. 258; Sup. Ind. ¶ 4. On April 2, 2024, the Court sentenced Defendant to one year and one day of imprisonment and two years of supervised release, in addition to a $100 special assessment. J., ECF No. 585. The Court ordered Defendant to self-surrender by January 6, 2025, before 2:00 P.M., but she failed to do so and remained unaccounted for until the FBI located and arrested her on January 28, 2025. *See* Compl. 6, *United States v. Shen*, No. 25–CR–48 (E.D.N.Y. Oct. 3, 2025), ECF No. 1.

The Government filed a motion pursuant to Federal Rules of Criminal Procedure 46(f) for forfeiture of the bail and an entry of judgment on the bail bond against Defendant and the Sureties in the amount of $250,000. Gov.'s Mot. for Forfeiture, ECF No. 610. In the 10/27/25 Mem. & Order, the Court directed the Clerk of Court to enter default judgment on the bond against Defendant and ordered the forfeiture of the bond to be enforced against Defendant, but it deferred entry of judgment and enforcement of the bond against the Sureties. Notice of the Government's motion for forfeiture and the Court's 10/27/25 Mem. & Order was mailed to the Sureties' current addresses, and the Sureties were ordered to submit opposition papers to the motion for forfeiture and entry of judgment, if any, by February 2, 2026. Counsel for all three Sureties subsequently submitted opposition papers,[1] and on April 13, 2026, oral argument was heard concerning entry of

[1] Opposition to Government's Motion for Entry of Judgment on Bail Bond and Motion to Set Aside Forfeiture as to Surety Yiming Song, ECF No. 644 ("Song Opp'n"); Motion to Reconsider and Set Aside Forfeiture and Entry of Judgment and for Remission as to Chen Zhang, ECF No. 647 ("Zhang Opp'n"); Opposition of Siu Mei Lam To Government's Motion for Entry of Judgment on Bail Bond and Motion to Set Aside Forfeiture and Request for Remission, ECF No. 657 ("Lam Opp'n").

default judgment and enforcement of the bond forfeiture against the Sureties. Transcript of Apr. 13, 2026 Bond Forfeiture Hearing, ECF No. 659.

## LEGAL STANDARD

Under Rule 46(f) of the Federal Rules of Criminal Procedure, "[t]he court may set aside in whole or in part a bail forfeiture upon any condition the court may impose if: (A) the surety later surrenders into custody the person released on the surety's appearance bond; or (B) it appears that justice does not require bail forfeiture." Fed. R. Crim. P. 46(f)(2). If a court does not set aside a bail forfeiture, it "must, upon the government's motion, enter a default judgment." Fed. R. Crim. P. 46(f)(3)(A). Under Rule 46(f)(4), however, the court may also remit a judgment enforcing such forfeiture "in whole or in part . . . under the same conditions specified in Rule 46(f)(2)." "The court must exonerate the surety and release any bail . . . when the court has set aside or remitted the forfeiture." Fed. R. Crim. P. 46(g).

"The burden of establishing grounds for remission is on the party challenging the forfeiture." *United States v. Gambino*, 17 F.3d 572, 574 (2d Cir. 1994) (citing *United States v. Egan*, 394 F.2d 262 (2d Cir. 1968); *see United States v. Ahmed,* No. 21-1193, 2022 WL 18717740 (1st Cir. Nov. 1, 2022) ("We note the burden [is] on the [defendant and co-surety challenging the forfeiture] in the proceedings below to prove that the bail forfeiture should be set aside."); *United States v. Blake*, No. 14–CR–312, 2014 WL 6606692, at *2 (E.D.N.Y. Nov. 19, 2014) ("The burden of establishing grounds to set aside or remit a forfeiture rests with the party seeking to challenge the forfeiture.") (citing *Gambino*, 17 F.3d at 754). "[The determination of whether to set aside bail forfeiture] lies within the discretion of the district court." *United States v. Hatfield*, No. 06–CR–0550, 2015 WL 3476927 (E.D.N.Y. June 2, 2015), *aff'd sub nom. United States v. Brooks*, 872 F.3d 78 (2d Cir. 2017); see *United States v. Gallego*, No. 02–CV–5987, 2003 WL 1193536 (E.D.N.Y.

Jan. 29, 2003) (courts have "broad discretion" under Rule 46(f)); *United States v. Alrahib*, No. 22-13172, 2024 WL 4298263, at *3 (11th Cir. Sept. 26, 2024) ("District courts have 'virtually unbridled discretion' to remit bond forfeiture" (citation omitted)).

## DISCUSSION

### I. Application of the *Gambino* factors

Courts in the Second Circuit consider the following factors in deciding whether to remit or set aside a bond forfeiture:

> whether the defendant's breach of the bond conditions was willful; the cost, inconvenience and prejudice suffered by the government as a result of the breach; . . . any explanation or mitigating factors presented by the defendant; . . . whether the surety has assisted in the apprehension of the defendant; and whether the surety is a professional or a friend or member of the defendant's family.

*Gambino*, 17 F.3d at 574 (quoting *United States v. Carvajal*, 674 F.Supp. 973, 974 (E.D.N.Y. 1987)). "A court must also consider 'the deterrence value of total forfeiture.'" *United States v. Rufai*, No. 18–CR–201, 2022 WL 2751857, at *1 (S.D.N.Y. July 13, 2022) (quoting *Gambino*, 17 F.3d at 575). "Notably, however, the [c]ourt cannot consider . . . the financial hardship of the [surety] because it is the interests of justice—and not the interests of the [the surety]—which must be considered." *Hatfield*, 2015 WL 3476927, at *3 (quoting *Carvajal*, 674 F.Supp at 974). "In making the decision as to what, if any, part of the forfeiture to set aside, the court has an obligation to strike a balance between the competing interests of cost to the government and deterrence to defendants and sureties." *United States v. Stathakis*, No. 04–CR–790, 2007 WL 3124703 (E.D.N.Y. Oct. 24, 2007) (citation omitted).

Much of the analysis of the *Gambino* factors as applied to the Sureties will necessarily overlap with the Court's analysis in the 10/27/25 Mem. & Order, but, for completeness, this Court will consider each factor again in light of the arguments presented by the Sureties' counsel.

**a. Willfulness**

The Sureties do not deny that Defendant's decision to flee was willful. Instead, they argue that Defendant's willfulness should not be held against them because they were neither involved in nor aware of the breach. Song Opp'n at 17-18; Zhang Opp'n at 6. But a surety's lack of knowledge or participation in the defendant's breach is not considered under this factor and should not weigh in favor of remission. Otherwise, sureties would be encouraged to cut off contact with the defendant, undermining their very purpose of ensuring the defendant appears in court. *See Martinez*, 151 F.3d at 74 (reasoning that bail bonds incentivize sureties to prevent the defendant from fleeing).

**b. Cost, Inconvenience and Prejudice to the Government**

The Sureties argue that the cost and inconvenience incurred by the Government due to Defendant's flight were minimal because Defendant was quickly apprehended. Song Opp'n at 18; Zhang Opp'n at 7. But the Government undertook extensive efforts during the three weeks Defendant remained at large, and several other courts have held that the Government's various actions taken to apprehend a defendant who has fled are sufficient to show cost, inconvenience, and prejudice to the Government. *See* 10/27/25 Mem. & Order at 20; *Gambino*, 17 F.3d at 574–75 (affirming the district court's determination that the government's efforts in searching for and locating the defendant at a hotel residence in a different state twenty days after he failed to appear in court weighed in favor of full forfeiture); *Blake*, 2014 WL 6606692, at *3 (factor weighed against remission where the government deployed agents to locate and detain the defendant, obtained and executed search warrants and subpoenas, and analyzed that information to aid their efforts). The Government also incurred additional expenses as a result of Defendant's flight

because it required the Court to hold further proceedings in relation to her failure to surrender. *See* 10/27/25 Mem. & Order at 21.

**c. Mitigating Factors and Explanations**

The Sureties maintain that several mitigating factors weigh in favor of remission. First, Sureties Song and Zhang claim to have believed they only had a "nominal" or "minimal" role in the bond because the bond was secured by real property collateral. Song Opp'n at 19; Zhang Opp'n at 7. The record shows, however, that Judge Orenstein carefully explained the nature of their obligations to them at the August 7, 2018 Detention Hearing, and each Surety confirmed numerous times that they understood the risks and obligations. *See* Transcript of Aug. 7, 2018 Detention Hearing, ECF No. 613. Judge Orenstein explicitly asked them if they understood that each was "taking the risk that you will owe the Government 250,000 dollars if [Defendant] violates the conditions of release," and both answered yes. *Id.* at 13. Later in the hearing, Judge Orenstein again asked if they understood that "if [Defendant] violates any of those conditions I just explained, each of you will be responsible for the entire debt of 250,000 dollars," and both answered yes. *Id.* at 18. Judge Orenstein also told them "[t]he whole amount is 250,000 dollars, but the Government could decide for its own purposes to choose any one of you to satisfy that debt . . . . [i]f they say, give us the 250,000 dollars, that'll be your responsibility." *Id.* at 21. Thus, the claim that Sureties Song and Zhang did not understand the full implications of signing the bail bond is inconsistent with the record.

Sureties Song and Zhang also argue that their distant relationship with Defendant should be considered a mitigating factor. Song Opp'n at 18; Zhang Opp'n at 7. But as explained above, the Sureties knowingly and voluntarily signed Defendant's bond and assumed the associated risk despite their minimal relationship with Defendant. Judge Orenstein also informed them that they

could change their minds at any time and be removed from the bond if they later decided they did not want to take the risk. Tr. of Aug. 7, 2018 Detention Hr'g at 19.

**d. Surety's Assistance in Apprehension**

None of the Sureties contend that they assisted with Defendant's apprehension. And for the same reasons explained above, a surety's unawareness of the defendant's flight should not affect the weight of this factor, nor should the fact that a surety attempted to locate the defendant but was unsuccessful in doing so.

**e. Nature of the Surety**

"The rationale for considering [the surety's relationship to the defendant] is that nonprofessionals may not fully comprehend the risks incurred when executing a bail bond as a surety." *Blake*, 2014 WL 6606692, at *3 (citing *Gallego*, 2003 WL 1193536, at *2). However, when the sureties are "carefully advised of their responsibilities" and/or explained "the consequences of posting the bond" by a judge, this factor "is not a compelling consideration." *Blake*, 2014 WL 6606692, at *3; *Gallego*, 2003 WL 1193536, at *2. "Moreover, this factor, standing alone, has been held insufficient to set aside a forfeiture of bail." *Blake*, 2014 WL 6606692, at *3 (citing *United States v. Billini*, No. 99–CR–156, 2006 WL 1586553, at *2 (S.D.N.Y. June 8, 2006)).

The Sureties in this case are not professional sureties. But as discussed above, they knowingly and voluntarily signed Defendant's bond after Judge Orenstein carefully advised them of their responsibilities and the consequences of posting the bond. Accordingly, this factor is not a compelling consideration, and even if it were to support remission, it is not alone dispositive. *See Hatfield*, 2015 WL 3476927, at *4 (finding that this factor is not dispositive even when the sureties were the defendant's family members).

**f. Deterrence Considerations**

As the Court previously recognized, this is exactly the type of high-profile narcotics case in which bail forfeiture would deter both the underlying conduct and the continued criminality in cases where courts allow bail. 10/27/25 Mem. & Order at 26; *see Gambino*, 17 F.3d at 575 ("the deterrence value served by total forfeiture is especially important in high-profile narcotics and racketeering cases").

While the deterrence value of total forfeiture may be reduced by the fact that Defendant pleaded guilty to failure to surrender and is currently incarcerated, other courts have declined to set aside or remit forfeiture even when the defendant has already been apprehended. *See Blake*, 2014 WL 6606692, at *4 (finding that while the defendant had been apprehended and was before the court, "this distinction [was] not controlling"); *Gallego*, 2003 WL 1193536, at *4 ("The modern cases in this circuit addressing the issue of remission or discharge have all denied the requested relief, even when the defendant had ultimately appeared."). To the extent this factor favors the Sureties, it is not enough to overcome the weight of the other factors.

Taken together, this Court concludes that the *Gambino* factors weigh against remission of the bond forfeiture as to the Sureties.

**II. Lack of Notice**

**a. Bond Modifications**

Courts have long recognized that a surety's obligation may be discharged when the underlying agreement is materially altered without notice to or consent from the surety. *See Smith v. United States*, 69 U.S. 219, 237 (1864) ("any variation in the agreement to which the surety has subscribed . . . without the surety's knowledge or consent, and which may prejudice him, or which may amount to a substitution of a new agreement . . . will discharge the surety"); *Reese v. United*

*States*, 76 U.S. 13, 22 ("There is . . . an implied covenant on the part of the government, when the recognizance of bail is accepted, that it will not in any way . . . take any proceedings with the principal which will increase the risks of the sureties or affect their remedy against him.") In the context of bail bonds, however, this and other circuits have held that "a surety is not relieved of its obligation on a bond by modification of bail conditions unless the government has *materially increased the surety's risk* without notice to and consent of the surety." *Gambino*, 17 F.3d at 574 (emphasis added); *see United States v. Martinez*, 151 F.3d 68 (2d Cir. 1998) (citing *Gambino*); *United States v. King*, 349 F.3d 964, 967 (7th Cir. 2003) ("When [sureties] do not get notice, and the underlying agreement is materially altered to the sureties' detriment, then the sureties' obligation is discharged."); *United States v. Mohammed-Ali*, 822 F.3d 312, 314 (6th Cir. 2016) ("Absent notice and an opportunity to remove . . . a material change in risk can discharge the surety's obligation." (internal quotations omitted)).

In cases where a surety's obligation has been discharged due to lack of notice of a material modification, the bail modifications in question have included, for example, more stringent conditions of release, *Stathakis*, 2007 WL 3124703, at *1; re-release of the defendant after commission of a serious additional crime, *United States v. Zhang*, 153 F. Supp. 2d 341 (S.D.N.Y. 2001); and the additional of new criminal charges, *Allstate Ins. Co. v. Am. Bankers Ins. Co. of Fla.*, 882 F.2d 856 (4th Cir. 1989). Some courts have held that a surety must show "not only that a changed bail condition materially increased the surety's risk but also that the defendant's flight is causally related to the incremental increase in risk created by the changed condition." *United States v. Billini*, No. 99 CR. 156, 2006 WL 3457834 (S.D.N.Y. Nov. 22, 2006) (citation omitted); *King*, 349 F.3d at 968 ("Still, to say that a material increase in risk can exonerate the surety is not to say that it always does so. It is necessary to ask whether the incremental risk came to pass.").

Here, Sureties Song and Zhang do not allege that any of the bond modifications increased Defendant's risk of flight; instead, they argue that the reduction in the number of sureties and substitution of the collateral increased the sureties' potential liability. Song Opp'n at 7; Zhang Opp'n at 4. However, the sureties do not cite—and this Court has been unable to find—any cases in which bond modifications of this nature (i.e., substitution and removal of sureties or substitution of collateral) constituted a material increase in risk that could discharge a surety's obligation.

Even assuming this type of modification could constitute a material increase, in the instant case, Sureties Zhang and Song have failed to demonstrate that the bond modifications caused an actual material increase in risk between the original bond and the current operative bond. The net effect of the three bond modifications was that the original property pledged as collateral was replaced with different property, the total number of sureties was reduced from five to three, and of the remaining three sureties, two are among the original sureties and one is a substitute surety added to the bond in April 2019. Regarding the property, Sureties Zhang and Song provide no evidence that the replacement property is insufficient as collateral or less valuable than the original property. On the contrary, they allege that the replacement property is valued at approximately $1.5 million with an estimated $500,000 in equity after mortgage encumbrances, which is more than sufficient to satisfy a $250,000 judgment. Song Opp'n at 23; Zhang Opp'n at 8. Accordingly, the substitution of the original property did not cause a material increase in the sureties' risk.

Sureties Zhang and Song also argue that the reduction in the total number of sureties from five to three increased their risk exposure and potential proportional liability. Song Opp'n at 7; Zhang Opp'n at 4. But simply having fewer total sureties does not, alone, mean that the risk to the remaining sureties is materially higher. Sureties provide the court with both financial and moral assurance of the defendant's appearance; as such, their sufficiency depends on their level of

financial responsibility and moral suasion over the defendant. *See United States v. Batista*, 163 F. Supp. 2d 222, 224 (S.D.N.Y. 2001) ("In addition to the requirement of financial responsibility, a defendant must show that the proposed suretors exercise moral suasion to ensure the defendant's presence at trial.").

In this case, there is no clear indication that the sureties removed from the bond had particularly high moral suasion over the defendant (or especially large assets) such that their removal or substitution would materially increase the risk to the remaining sureties. If anything, the record demonstrates the opposite. The two sureties removed at the April 22, 2019 Detention Hearing, Chau Chung and Quyen Chung, testified that they only knew Defendant because she lived in the same household as their younger brother. Tr. of Aug. 7, 2018 Detention Hr'g at 24, ECF No. 613. By contrast, the two sureties brought in to replace them, Sui Mei Lam and Zhang Li Ping, testified that they had been friends with Defendant for several years. Transcript of Apr. 29, 2019 Bond Hearing at 6–7, ECF No. 614. Further, Surety Lam is one of the remaining three sureties, and it was her real property that was later added to the bond as security. At the April 22, 2019 Detention Hearing, the Court and the Government both agreed that the bond would actually be stronger after substitution of the two sureties. Transcript of Apr. 22, 2019 Detention Hearing at 16, ECF No. 615.

Furthermore, the argument that reducing the total number of sureties increased their proportional liability misconstrues the terms of the bond. Sureties are jointly and severally liable for the full amount of the bond, a fact that was clearly explained to Sureties Zhang and Song at the August 7, 2018 Detention Hearing.[2] Thus, regardless of how many sureties are removed from the bond, each individual surety remains liable for the full $250,000.

---

[2] *See supra* at 7.

Surety Song also claims that the continuation of the bail bond after Defendant's conviction and sentencing constituted a modification of the bail conditions that materially increased risk. Song Opp'n at 7–8. But Judge Orenstein clearly explained that the bond would continue as long as Defendant remained under an obligation to come back to court, Tr. of Aug. 7, 2018 Detention Hr'g at 20, ECF No. 613, and the Second Circuit squarely held in *Martinez* that by signing a continuing bond, "a surety assumes whatever risk of flight results from the defendant's conviction, whether at trial or after a guilty plea." 151 F.3d at 72–73; *see also United States v. Noriega-Sarabia*, 116 F.3d 417 (9th Cir. 1997) (rejecting the notion that a surety is released from the bond as soon as a defendant pleads or is found guilty).

In sum, Sureties Song and Zhang have not met their burden of showing that any of the bond modifications constituted a material increase in risk. Therefore, their bond obligations should not be discharged due to lack of notice.

**b. Forfeiture Proceedings**

Due process "requires that an individual be given 'notice and opportunity to be heard' prior to the state's permanent deprivation of his property interest." *Chunn v. Amtrak*, 916 F.3d 204, 207 (2d Cir. 2019) (quoting *Dusenbery v. United States*, 534 U.S. 161, 167 (2002)). Ordinarily, due process requires the opportunity for "some kind of a hearing" prior to the deprivation of a significant property interest." *Id.* (quoting *Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 299 (1981)).

Sureties Song and Zhang argue that their due process rights were violated because they did not receive actual notice of the forfeiture proceedings until after the Court had already granted the Government's motion for forfeiture. Song Opp'n at 11; Zhang Opp'n at 5. They acknowledge that

notices were mailed but claim they were sent to outdated addresses on file with the Court and thus were never actually received. *Id*.

Rule 46(f) states "the government must serve any [motion to enforce a surety's liability], and notice as the court prescribes, on the district clerk. If so served, the clerk must promptly mail a copy to the surety at its last known address." Fed. R. Crim. P. 46(f)(3)(C). This procedural notice requirement was fully satisfied since the clerk mailed copies of the motion and notice to the last known (albeit outdated) addresses of the Sureties.

More importantly, the forfeiture proceedings against Defendant did not trigger due process requirements as to the Sureties because they were not "permanently depriv[ed]" of their property as a result of the Court's 10/27/25 Mem. & Order. *Chunn*, 916 F.3d at 207. Indeed, the Court deliberately deferred on the issue of whether to enter default judgment and enforce the bond against the Sureties so that they would first receive notice and have the opportunity to be heard before any final determination was made. 10/27/25 Mem. & Order at 27. The Sureties were then properly notified, opposition papers were filed, and a hearing was held before this Court where counsel for the Sureties argued their case. These procedural protections are sufficient to provide the Sureties with due process. *See Hodel*, 452 U.S. at 303 ("It is sufficient, where only property rights are concerned, that there is at some stage an opportunity for a hearing and a judicial determination." (citing *Ewing v. Mytinger & Casselberry*, 339 U.S. 594, 599 (1950))).

### III. Prioritizing Enforcement against Property Collateral

In the alternative, Sureties Song and Zhang argue that this Court should prioritize enforcement or execution of the judgment against Surety Lam's property first before pursuing their own assets. Song Opp'n at 22–26; Zhang Opp'n at 8–10. But there is no mechanism or authority for this Court to do so. Rule 46 does not authorize courts to apportion liability between sureties or

direct the Government to pursue the assets of one before the others. As Judge Orenstein explained to Sureties Song and Zhang at the August 7, 2018 Detention Hearing, the Government has the discretion to pursue any one of the Sureties for the full $250,000 amount. Tr. of Aug. 7, 2018 Detention Hr'g at 19. The Government may well decide to go after Surety Lam's property first, but it is not within this Court's power to dictate that decision.

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends the District Court direct the Clerk of the Court to enter default judgment on the $250,000 bond against the Sureties and order the forfeiture of the bond in its entirety to be enforced against the Sureties.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Marcella v. Cap. Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 46 (2d Cir. 2002); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

/s/

Steven Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
October 21, 2026